Oaruti-iers, J.,
delivered the opinion of the Court.
Morgan & Co., obtained a judgment for about *374 $3400.00 against J. S. Decherd, and the defendant, Blanton, who had contracted the debt as partners, and were jointly liable. But the partnership had, before that judgment, been dissolved, and J. S. Decherd had obligated himself to pay the debts of the firm, including the one above. Blanton being apprehensive that Decherd was about to move and carry off his property to Texas, filed his bill of attachment against him, and his property was accordingly seized by the sheriff. For the forthcoming of the property, to wit: A negro boy named Tom, four other slaves, &c., a bond was executed with complainant Benj. Decherd and B. S. Decherd, sureties, on the 13th Sept. 1853. Benj. Decherd soon after filed his eross bill, claiming that the boy, Tom, was his property, until paid for by J. S. Decherd, and therefore not liable to be taken for the debts of the latter.
The case made out is, that a short time before the attachment, the said Benjamin had sold verbally, a negro boy named Sam, to his son, the said J. S., for $900, but the title was withheld by express- stipulation until the money was paid. Tom was afterwards exchanged for Sam, under the same contract. Possession was delivered under this contract, and so remained with J. S. until attached. No part of the $900, has been paid, and the title of the complainant is clear, unless he is estopped from the assertion of it, by signing the said .bond for the delivery of the slaves and other property, or the attending circumstances and consequences. This is the only ground of defence, and that failing the complainant must succeed.
*375 The condition of the bond after reciting the filing of the bill of Blanton vs. J. S., the issuance of the attachment, áte., states that it was “levied on a negro slave named Hannah, Tom” and the other slaves, &c., “as the property of J. S. Decherd.” It then proceeds: “Now, if we should have 'all of said property forthcoming at the termination of said suit, to satisfy whatever decree may be rendered, in the premises, then this obligation to be void, otherwise to be in full force.” He said at the time of signing the bond, to several persons, but not to the sheriff, or the adverse party, none of them being then present, that Tom was his property, and that he would contend for him, and did not consent to sign, until his brother told him, it would not effect his right to sue.
Does this estop B. Decherd from asserting the truth as to his title, to the boy, Tom? or, is he concluded by the bond? There is no express acknowl-edgement in the bond, that the property belonged to the defendant in the process, J., S. Decherd, but it is only recited that it was levied on “as” his property. That is no contradiction of the right now set up. The covenant is, that the said property shall be forthcoming to satisfy such decree as may be made. From the performance of this covenant, a Court of Equity may discharge him, upon a proper case made out. But it is argued, that if this be not a case of estoppel by deed, it must under the circumstances, operate as an estoppel in pais. A much broader range has been given to the doctrine of estoppel in pais, by the recent decisions both in England, and in this country, than that which formerly existed.
*376 But still, the doctrine can only apply where some declaration is made or act done to influence the conduct of another, in his dealing, and which actually leads him into a line of conduct, which must be prejudicial to him, unless the party so misleading him, be cut off from asserting a conflicting right.
This doctrine has been guarded with great strictness, because an estoppel may exclude the truth. No one shall be deprived of setting up the truth, unless it is a direct contradiction of his former allegations, or acts, and if so, where this rule applies, he is estopped. 1, Gr. Ev. 26.
In Dazell vs. Odell, 3 Hill, 219, Judge Brown holds, that to constitute an estoppel in pais there must be, “ 1st, an admission inconsistent with the evidence which is proposed to be given; or the title or claim proposed to be set up: 2d, an action of the other party upon such admission; and 3d, an injury to him by allowing the admission to be disproved.”
According to these principles, can it be pretended that B. Decherd has done anything to preclude him from the benefit of asserting the truth in relation to his title to Tom? We think, most clearly not. He has in no way admitted the title to be in his son, as the bond only states, that he was levied on “ as the property of J. S.” It is no contradiction of this, to contend that the sheriff was mistaken in the ownership. Here there is no admission inconsistent with the claim now set up; and so the first requisite of an estoppel in pais, according to the above analysis, does not- exist; neither does the. second, as no act or admission has been done or made by which any *377 action has been produced on the other side. Their course was taken, and preceeded the execution of the bond.
At the time of executing the bond, he did not conceal his claim, or remain silent, but asserted it.
The levy was not the consequence but the cause of' the execution of the bond. The cause might be different and fall under the operations of the principle, if any admissions, or declarations, or acts of B. Dech-erd, had produced the action of the officer, and injury would result to the other party, from permitting him to set up a right in conflict with such admissions, &c. It is said in argument, that other steps could have' been successfully taken to secure this debt, if it had not been for the reliance upon this property. That was the risk of the party, and cannot change the principle or defeat an opposing title.
This case then, we think, presents the simple question, whether the execution - of an ordinary delivery bond, either as principal or surety, by one whose property is levied upon, under an execution, or attachment, against another, estops him from the assertion of his right? And we think, it does not. Such bond is required by law, and must be given, or the property surrendered; no matter how clear the right of the party may be. It does not stand upon the same ground, as to its effects, or consequences upon the party, as if it were freely and voluntarily entered into without legal compulsion. In such a case, something more than the mere execution of a delivery bond, is necessary to raise the conclusive legal presumption *378 against the right of the party; which is, what is meant by an estoppel.
The case of Helm vs. Wright, 2 Hump. 75, is much stronger than the present. There, the delivery bond recited that the property levied upon, was that of defendant in the execution; here, there is no such statement; but it is, that it was levied upon “as the property of J. S. Decherd.” Relief was given by reforming the bond, on the ground, that such recital was not noticed by Helm, and signed by mistake, and thereby saving the party from the estoppel in his suit, for the property. The case before us is very similar to that, except the distinction before stated, and that difference in favor of the case under consideration. The Chancellor in this case, based his decree upon the ground of mistake, which might well be done in view of the facts. Rut without that, his conclusion was right on the other grounds we have stated.
There is then, in this case, no estoppel in deed or in pais, and the complainant having clearly established his title to Tom, the decree in his favor will be affirmed.